UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREGG SINGER, SING FINA CORP., and
9th & 10th STREET LLC,

                Plaintiffs,

- against -

THE CITY OF NEW YORK, THE NEW
YORK CITY DEPARTMENT OF
BUILDINGS, THE GREENWICH VILLAGE
SOCIETY FOR HISTORIC
PRESERVATION, BILL DE BLASIO,
ROSIE MENDEZ, CARLINA RIVERA,
ANDREW BERMAN, and AARON
SOSNICK, in their individual and official
capacities, and JOHN AND JANE DOE 1-100,
whose identities are unknown at present,

                Defendants.

**ORDER**

18 Civ. 615 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Gregg Singer and his companies, Plaintiffs Sing Fina Corp. and 9th & 10th Street LLC, move – pursuant to Rules 59(e), 60(b)(1), 60(b)(2), and 60(b)(6) of the Federal Rules of Civil Procedure – to amend this Court's September 30, 2019 order dismissing the Amended Complaint. For the reasons stated below, Plaintiffs' motion will be denied.

## BACKGROUND

**I. FACTS**

        The factual background of this case is set forth at great length in this Court's September 30, 2019 order dismissing Plaintiffs' claims (the "Dismissal Order"). (See Dismissal

Order (Dkt. No. 101) at 2-21)[1]  Familiarity with the facts alleged in the Amended Complaint is therefore assumed.

## II. PROCEDURAL HISTORY

### A. Amended Complaint

The Amended Complaint was filed on June 22, 2018, and names as Defendants (1) the City of New York (the "City"), the New York City Department of Buildings (the "DOB"), and three City officials – Mayor Bill de Blasio and City Council Members Rosie Mendez and Carlina Rivera (together with the City and the DOB, the "City Defendants"); (2) the Greenwich Village Society for Historic Preservation (the "Society") and its Executive Director, Andrew Berman (collectively, the "Society Defendants"); and (3) Aaron Sosnick, a director of the East Village Community Coalition ("EVCC").  (Am. Cmplt. (Dkt. No. 55) ¶¶ 17-24)

In the Amended Complaint, Plaintiffs assert six claims pursuant to 42 U.S.C. § 1983 against all Defendants:  (1) a First Amendment retaliation claim; (2) an equal protection claim on a theory of selective enforcement; (3) an equal protection claim on a "class of one" theory; (4) a substantive due process claim; (5) a Takings Clause claim under the "unconstitutional conditions doctrine"; and (6) a Section 1983 conspiracy claim.  Plaintiffs also allege a conspiracy claim, pursuant to 42 U.S.C. § 1985(3), and a claim for neglecting to prevent the Section 1985 conspiracy, pursuant to 42 U.S.C. § 1986.  Finally, Plaintiffs assert state law claims for:  (1) tortious interference with prospective economic advantage, against the Society and all individual Defendants; and (2) defamation, against the Society Defendants.  (Id. ¶¶ 165-377)

---

[1]  The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

B.  **The Dismissal Order**

The City Defendants, the Society Defendants, and Sosnick each moved to dismiss the Amended Complaint. (City Mot. (Dkt. No. 76); Berman Mot. (Dkt. No. 80); Sosnick Mot. (Dkt. No. 84)) In the Dismissal Order, the Court granted Defendants' motions and dismissed the Amended Complaint in its entirety. (Dismissal Order (Dkt. No. 101) at 48)

With respect to Plaintiffs' First Amendment retaliation claim, the Court held that the Amended Complaint does not sufficiently allege any conduct or expression protected by the First Amendment.[2] (Id. at 27-29) The Court also held that, even if Plaintiffs had alleged such protected conduct or expression, the Amended Complaint does not allege a causal relationship between Plaintiffs' exercise of their First Amendment rights and any of Defendants' alleged activities related to construction on Old P.S. 64.[3] (Id. at 29-30)

As to Plaintiffs' equal protection claims, the Court held that Plaintiffs' allegations in the Amended Complaint do not show that Plaintiffs were treated differently from others similarly situated, as is necessary to sustain any type of equal protection claim. (Id. at 30-34) Recognizing that courts in this Circuit apply a lower standard of similarity to selective enforcement claims than to "class of one" claims, this Court concluded that Plaintiffs had not sufficiently alleged their equal protection claims under either standard. (Id. at 33 ("Plaintiffs' allegations are not sufficient to show that the other student dormitory projects are 'similarly situated in all material respects' to the Old P.S. 64 project, much less that there is an 'extremely high degree of similarity between' the project and its comparators."); see also id. (also holding

---

[2] Although not relevant to the instant motion, in the Dismissal Order, the Court rejected the argument – raised by the Society Defendants and Sosnick – that Plaintiffs' claims were not ripe for review. (See Dismissal Order (Dkt. No. 101) at 23-25)

[3] As explained in the Dismissal Order, "Old P.S. 64" refers to the building located at 605 East 9th Street in Manhattan, which is owned by Plaintiff 9th & 10th Street LLC. (See Dismissal Order (Dkt. No. 101) at 2; Am. Cmplt. (Dkt. No. 55) ¶ 14)

3

that Plaintiffs had not alleged facts sufficient to conclude that the Adelphi lease and Cooper Union lease are similarly situated in all material respects))

The Court next held that the Amended Complaint does not plausibly plead a substantive due process claim for two independent reasons.  First, "[t]he Amended Complaint does not allege that DOB 'had no discretion to withhold [the permits] in [their] particular case,'" as Plaintiffs were required to allege in order to establish that they had a valid property interest protected by the Due Process Clause.  (Id. at 35-36 (quoting Stahl York Ave. Co., LLC v. City of New York, No. 14 Civ. 7665 (ER), 2015 WL 2445071, at *13 (S.D.N.Y. May 21, 2015))  Second, the Court held that – even if Plaintiffs had pled the existence of a valid property interest in the Old P.S. 64 building permits – the Amended Complaint does not adequately plead "the second prong of the substantive due process analysis:  that Defendants' 'official conduct [is] outrageous and egregious under the circumstances.'"  (Id. at 38-39 (quoting Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007))  This Court reasoned that – even though the Amended Complaint alleges that Defendants denied Plaintiffs the permits they sought in a selective manner – "[t]hese types of allegations of improper motives and selective enforcement on the part of municipal officials fall into the non-conscience-shocking category."  (Id. at 39 (quotation marks, citations, and alterations omitted))

As to Plaintiffs' Takings Clause claim – which is purportedly brought pursuant to the "unconstitutional conditions doctrine" – this Court noted that "Plaintiffs have cited no authority for the proposition that an unconstitutional conditions doctrine claim is cognizable where a government agency provides reasons for its denial of a permit – reasons Plaintiffs do not contend constitute unconstitutional conditions – and the alleged condition is unofficial and implicit."  (Id. at 42)  But "[e]ven assuming that such a claim can be premised on an implied

4

condition inconsistent with the stated reasons for denial of a permit," the Court held that "any such claim would not succeed here, because Plaintiffs do not sufficiently plead that the alleged condition amounts to a taking" under any theory, including a so-called "regulatory taking." (Id. at 42-43)

The Court next dismissed Plaintiffs' Section 1983 and 1985 conspiracy claims, because "Plaintiffs have not sufficiently pled any of the constitutional violations that underlie their Section 1983 and Section 1985(3) claims." (Id. at 46)  This Court likewise dismissed Plaintiffs' claim under 42 U.S.C. § 1986, because such a claim "'is contingent on a valid [Section] 1985 claim.'" (Id. at 47 (quoting Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996))

Finally, in light of the Court's dismissal of each of Plaintiffs' federal claims, the Court "decline[d] to exercise supplemental jurisdiction over their remaining state law claims." (Id. at 48)

### C. Plaintiffs' Motion for Reconsideration and the Second Amended Complaint

After filing their Notice of Appeal from the Dismissal Order, Plaintiffs filed the instant motion.  Plaintiffs "move pursuant to Rules 59(e), 60(b)(1), and/or 60(b)(6) of the Federal Rules of Civil Procedure, to alter or amend the Court's [Dismissal Order], in order to grant Plaintiffs leave to amend their Complaint pursuant to Federal Rule[] of Civil Procedure 15(a)." (Pltf. Mot. (Dkt. No. 105))[4]

---

[4] Based on the arguments presented in Plaintiffs' brief, it appears that they are also moving to alter the judgment under Federal Rule of Civil Procedure 60(b)(2), although they have not cited this provision.  (See Pltf. Br. (Dkt. No. 106) at 3-4)

1. **"Newly Discovered Facts" Purportedly Warranting Reconsideration**

In support of their motion, Plaintiffs submit a brief and "Proposed Second Amended Complaint" setting forth "newly discovered facts" relating to Plaintiffs' claims. (Pltf. Br. (Dkt. No. 106) at 4; Proposed Second Am. Cmplt. ("PSAC") (Dkt. No. 106-1))

Plaintiffs newly claim that, on December 6, 2016, Defendant Sosnick hired "HR&A Advisors," a consulting firm, "to further Mr. Sosnick's interests in relation to 605 East 9th Street, the address of Mr. Singer's building." (PSAC ¶¶ 26-27, 29 n.1 (emphasis in original)) On May 5, 2017, "a subsequent retainer agreement containing identical terms was signed by the EVCC . . . and filed with the Lobbying Bureau." (Id. ¶ 27) Plaintiffs allege that, after entering into these agreements, "HR&A . . . retained George Arzt Communications, Inc. . . . to lobby on behalf of the EVCC before various City and State government agencies in 'opposition to using [Old] P.S. 64 in Manhattan as a dormitory building.'" (Id. ¶ 29) Plaintiffs argue that these lobbying agreements are "[d]irect [e]vidence" that Sosnick intended to "[i]njure Plaintiffs" and prevent them from renovating Old P.S. 64. (Pltf. Br. (Dkt. No. 106) at 4)

Plaintiffs next add new allegations regarding Sosnick's various donations to local preservation groups. (See PSAC ¶¶ 30-32 (section entitled "A Wolf in Sheep's Clothing")) Plaintiffs claim that "Mr. Sosnick has given millions of dollars to[ ]every organization that is either actively lobbying against Mr. Singer's project or that has actively fought to landmark [Old P.S. 64] and downzone the area in order to prevent [Singer] from furthering his original development plans." (Id. ¶ 31) Plaintiffs contend that these donations are "particularly troubling in light of the fact that local activist groups, such as [the Society], falsely proclaim to be independent, citizen-funded community groups when, in reality, they are substantially funded by one citizen, Mr. Sosnick, and not apparently by the community as a whole." (Id.)

6

Plaintiffs also newly allege that Sosnick, through the EVCC, "contrived" to landmark Old P.S. 64 and "simultaneously lobbied to have the entire area encompassing the building rezoned." (Id. ¶ 33) Plaintiffs claim that this "downzoning prevented Mr. Singer (and any future developer for that matter) from utilizing the City's Community Facility bonus in the designated East Village block, meaning that he could no longer build any higher than the original five-stories." (Id. ¶ 36) Plaintiffs contend that this downzoning was "unprecedented" and was the product of Sosnick's "clear political influence." (Id. ¶ 37)

Plaintiffs also add allegations regarding two public statements made by Mayor de Blasio on October 12, 2017 and August 23, 2018, in which de Blasio announced that "the City [would] take steps to 'reacquire' [Old P.S. 64]." (See id. ¶¶ 39-49 (emphasis omitted)) Plaintiffs also allege that, in his August 23, 2018 statement, de Blasio falsely stated that Plaintiffs had not cooperated with the City in a potential repurchase of Old P.S. 64, which "diminished the value and potential of [Singer's] property." (See id. ¶¶ 39-47)

Plaintiffs next allege that – in February 2019 – Sosnick attempted to "purchase [Old P.S. 64] in cash for a fraction of its fair market value" by having a man named Paul Wolf contact Singer's lender. (Id. ¶¶ 45, 49-50) Plaintiffs assert that "Paul Wolf is the man behind the Aaron Sosnick curtain," because he purchased "the Boys Club of New York, located merely one block away from [Old] P.S. 64" in December 2018 on Sosnick's behalf. (Id. ¶ 50) Plaintiffs claim that Wolf's purchase of the Boys Club of New York "demonstrate[s] Mr. Sosnick's true motives" and "provide[s] further evidence of the targeted campaign against Mr. Singer and ultimately the modus operandi in which [Defendants] operate." (Id.)

Plaintiffs argue in their brief – but do not allege in the PSAC – that the DOB has issued unwarranted violations and orders regarding Plaintiffs' failure to maintain the structural

7

integrity of Old P.S. 64. (See Pltf. Br. (Dkt. No. 106) at 12-15) Plaintiffs claim that the DOB's actions were prompted by a February 6, 2019 phone call "reporting cracks in [Old P.S. 64]," which "was made directly from the Mayor's Office of Emergency Management." (Id. at 12 (emphasis omitted)). Plaintiffs contend that the phone call demonstrates that "City Hall [was engaged in] tainted machinations," and that the DOB's unwarranted violations and orders demonstrate that "[Defendants] . . . are succumbing to generalized political pressure and that agency determinations are marked by hypocrisy, lies and circular logic." (Id. at 12, 14)

In their brief – but, again, not in the PSAC – Plaintiffs also describe: (1) the DOB's May 10, 2019 final determination that the Dorm Rule applied to Plaintiffs' proposed development of Old P.S. 64; and (2) the DOB's August 12, 2019 determination that Plaintiffs could not "renovate and build out the space completely on vacant floors [of Old P.S. 64] without a tenant first leasing those floors." (Id. at 16-17)[5] Plaintiffs claim that, through these decisions, "DOB continues to obstruct [Plaintiffs'] legal as-of-right project by treating it differently than any other as-of-right project in the City." (Id. at 16)

### 2. "Incorrect Factual and Legal Assumptions" Purportedly Warranting Reconsideration

In addition to the purportedly new facts, Plaintiffs contend that reconsideration is warranted because the Dismissal Order "relies on incorrect factual and legal assumptions that . . . are material to Plaintiffs['] Equal Protection and Due Process claims." (Id. at 20)

Plaintiffs first appear to take issue with that portion of the Dismissal Order dismissing their substantive due process claim. (See id. at 20-28) Plaintiffs argue that the Dismissal Order "is materially incorrect insomuch that it rests . . . on the fact that [the]

---

[5] As explained in the Dismissal Order, the "Dorm Rule" refers to 1 RCNY § 51-01, a zoning rule adopted by the DOB on March 16, 2005. (See Dismissal Order (Dkt. No. 101) at 3-4)

'Amended Complaint does not allege that DOB had no discretion to withhold the permits.'" (Id. at 22 (quoting Dismissal Order (Dkt. No. 101) at 36))[6]  Without citing to any specific portion of the Amended Complaint, Plaintiffs contend that they alleged in the Amended Complaint that their permit application "was for an 'as-of-right' building permit[,] which is one that must be issued as a ministerial act by DOB as opposed to a discretionary one where DOB is empowered to exercise discretion." (Id. at 22)

Plaintiffs also argue that this Court made "a material factual error in relation to Plaintiffs['] [c]onspiracy . . . , equal protection, [and] substantive due process claims, [in concluding] that Adelphi University terminated the lease agreement due to 'alleged pressure' from the Defendants." (Id. at 28)  Plaintiffs contend that, "[u]nlike Cooper Union[,] who backed out of the lease agreement due to 'pressure' from the elected officials who protested in front of Cooper Union, Adelphi University was FORCED to cancel the lease agreement due to it being impossible for Adelphi to occupy the building in time for Fall 2018." (Id. at 30 (emphasis in original))

Finally, Plaintiffs argue that the Dismissal Order "makes a material factual error by overlooking the significance of the Mayor's public statement" on October 12, 2017, "the day after Adelphi terminated the lease agreement." (Id. at 31)

---

[6] Plaintiffs also "respectfully disagree with [this Court's] interpretation that the holding in [9th & 10th St. L.L.C. v. Bd. of Standards & Appeals of City of New York, 10 N.Y.3d 264 (2008)] applies regardless of whether a proposed building is utilizing a community facility zoning floor area ratio ('FAR') bonus or not." (Id. at 22)  The Dismissal Order does not rely in any fashion on 9th & 10th St. L.L.C., however.  Instead, this Court merely summarizes that decision in providing the procedural background of the instant case.  Accordingly, to the extent that Plaintiffs seek reconsideration of the Dismissal Order based on 9th & 10th St. L.L.C., 10 N.Y.3d 264, that request is denied.

### 3. "Manifest Injustice" Purportedly Warranting Reconsideration

Plaintiffs contend that reconsideration is also warranted because "there is a multitude of evidence that did not—and could not have—come to light until after Plaintiff[s'] Amended Complaint was filed." (Id. at 33) Without identifying any specific new evidence, Plaintiffs argue that "the new information was, by its very nature, concealed from both Plaintiffs and the Court and was discovered only after this litigation was commenced." (Id.) According to Plaintiffs, "maintain[ing] the Court's Order and Final Judgment in its current form . . . would preserve a manifest injustice by robbing Plaintiffs of their statutorily established recourse against the government." (Id.)

### 4. Motion for Leave to Amend

Lastly, Plaintiffs seek leave to file their PSAC "to add new facts that were not available at the time of the last amendment and that will cure any alleged deficiencies in their prior [Amended] Complaint." (Id. at 34)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Reconsideration Under Rule 59(e)

"Motions for reconsideration are governed principally by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Walsh v. Townsquare Media, Inc., 565 F. Supp. 3d 400, 402 (S.D.N.Y. 2021) (quotation marks and citations omitted). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" In re Beacon Assocs. Litig., 818 F. Supp. 2d 697,

701 (S.D.N.Y. 2011) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995). "The decision to grant or deny a motion for reconsideration is 'committed to the sound discretion of the district court.'" Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (quoting Wilder v. News Corp., 11 Civ. 4947 (PGG), 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016) (quoting Liberty Media Corp. v. Vivendi Universal S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012))).

  **B.** **Relief from Judgment Under Rule 60(b)**

    Federal Rule of Civil Procedure 60(b) "sets forth the grounds on which a court, in its discretion, can rescind or amend a final judgment or order." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). "Since [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Id. "A motion seeking such relief is addressed to the sound discretion of the district court." Id.

    Rule 60(b)(1) provides that a court may relieve a party from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). While this provision is ordinarily invoked in response to a party's mistake or excusable neglect, see, e.g., NEM Re Receivables, LLC v. Fortress Re, Inc., 187 F. Supp. 3d 390, 399-400 (S.D.N.Y. 2016), Rule 60(b)(1) also permits a district court to correct the court's mistakes of law or fact. See In re 310 Assocs., 346 F.3d 31, 35 (2d Cir. 2003) (per curiam). To prevail on a Rule 60(b)(1) motion based on the district court's mistake, the moving party must establish that the

court made a "'material mistake that changed the outcome of the [c]ourt's judgment.'"  Samuels v. United States, 12 Civ. 7362 (RJS), 2017 WL 6624849, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting Matura v. United States, 189 F.R.D. 86, 89 (S.D.N.Y. 1999)).

Rule 60(b)(2) permits a court to relieve a party from a final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  A party "seeking relief [under Rule 60(b)(2)] has an onerous standard to meet."  United States v. Int'l Brotherhood of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001).  To meet this standard, a movant must demonstrate that:  (1) "the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding"; (2) "the movant [was] justifiably ignorant of them despite due diligence"; (3) "the evidence [was] admissible and of such importance that it probably would have changed the outcome"; and (4) the evidence [was] not . . . merely cumulative or impeaching."  Id. (citation omitted).

"Rule 60(b)(6) authorizes a district court to grant relief to a moving party for 'any other reason that justifies relief.'"  Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (quoting Fed. R. Civ. P. 60(b)(6)).  While Rule 60(b)(6) affords district courts broad discretion "'to do justice in a particular case,'" id. (quoting Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986)), a party "seeking to avail itself of the Rule [must] demonstrate that 'extraordinary circumstances' warrant relief."  Id. (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988); Nemaizer, 793 F.2d at 63).  Moreover, Rule 60(b)(6) "applies only when no other subsection [of Rule 60(b)] is available."  Nemaizer, 793 F.2d at 63.

## II. ANALYSIS

Whether Plaintiffs' motion is treated as one brought under Rule 59(e), Rule 60(b)(1), or Rule 60(b)(2), it must be denied, because none of Plaintiffs' newly identified facts or arguments affect the reasoning set forth in the Dismissal Order.[7]

As to Plaintiffs' First Amendment retaliation claim, Plaintiffs do not appear to seek reconsideration of the Court's dismissal of that claim. In any event, Plaintiffs' new allegations still do not identify any protected expression for which Plaintiffs suffered retaliation. (See Dismissal Order (Dkt. No. 101) at 27-28) Nor do Plaintiffs' new allegations demonstrate that Defendants' actions "were motivated or substantially caused by" the exercise of any First Amendment rights. Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013). The PSAC – like the Amended Complaint – still alleges that Defendants blocked Plaintiffs' plans for Old P.S. 64 "before Adelphi executed a lease with 9th & 10th Street LLC, . . . and well before Plaintiffs allege Defendants learned of Adelphi's involvement in December 2016." (Dismissal Order (Dkt. No. 101) at 29; see PSAC ¶¶ 1, 32-40, 59, 63, 93, 96 (repeating allegations in Am. Cmplt.)) Because Plaintiffs' First Amendment retaliation claim rests on "Plaintiffs' and Adelphi's

---

[7] In seeking relief under Rule 60(b)(6), Plaintiffs cite (1) this Court's purported errors of fact and law; and (2) purportedly newly discovered facts that support their claims. (See Pltf. Br. (Dkt. No. 106) at 4-33) Because these arguments are properly addressed in motions brought pursuant to Rules 60(b)(1) and 60(b)(2), Rule 60(b)(6) does not provide a basis for relief. See Nemaizer, 793 F.2d at 63. Accordingly, to the extent that Plaintiffs' motion is premised on Rule 60(b)(6), it will be denied.

To the extent that Plaintiffs argue that Rule 15 provides an independent basis for this Court to amend the final judgment (see, e.g., Pltf. Br. (Dkt. No. 106) at 33), Plaintiffs have not cited any case law in support of such a theory, and this Court is aware of none. In any event, for the reasons explained below, granting leave to amend would not be proper, because the PSAC would not survive a motion to dismiss – the PSAC would be dismissed for the same reasons that this Court dismissed the Amended Complaint. Accordingly, Plaintiffs' proposed amendment is futile. See Murdaugh v. City of New York, No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

exercise of their First Amendment rights," and because Plaintiffs continue to assert that Defendants' alleged conduct "preceded Adelphi's involvement," Plaintiffs offer no reason for altering the Court's decision dismissing their First Amendment retaliation claim.  (See id. at 29-30)

As to Plaintiffs' equal protection claims, Plaintiffs still have not identified any "other student dormitory projects [that] are 'similarly situated in all material respects' to the Old P.S. 64 project."  (Id. at 33)  Although Plaintiffs' brief includes a section entitled "Disparate Treatment" (see Pltf. Br. (Dkt. No. 106) at 16), the only allegations in that section with respect to similarly situated dormitory projects are that:  (1) "[t]o date, DOB continues to obstruct Petitioner's legal as-of-right project by treating it differently than any other as-of-right project in the City"; and (2) "DOB permits all similarly situated developers to build."  (Id. (emphasis in original))  As discussed in the Dismissal Order, such conclusory and cursory allegations are not sufficient to state an equal protection violation under either a selective enforcement or "class of one" theory.  (See Dismissal Order (Dkt. No. 101) at 33-34); see also Adam J. v. Vill. of Greenwood Lake, 10 Civ. 1753 (CS), 2013 WL 3357174, at *7-8 & n.13 (S.D.N.Y. July 3, 2013) (concluding that real estate developers had not sufficiently alleged comparator similarity under either the "class of one" or selective enforcement standards for equal protection claims, where they had not described the nature of "the structure built" on comparative properties, "the zoning" of those properties, or any other details relevant to assessing similarity).  Accordingly, there is no basis for this Court to alter its dismissal of Plaintiffs' equal protection claims.[8]

---

[8] As to Plaintiffs' new allegations regarding the violations and orders issued by the DOB in 2019 (see Pltf. Br. (Dkt. No. 106) at 12-17), these allegations are not pled in the PSAC, and Plaintiffs do not explain how they relate to any of their constitutional claims.  In any event – in describing the DOB's alleged 2019 actions – Plaintiffs still have not identified any similarly situated development projects.  Accordingly, Plaintiffs' new allegations provide no basis for this

As to Plaintiffs' substantive due process claim, Plaintiffs still have not plausibly alleged either prong necessary to state such a claim. Plaintiffs' new factual allegations regarding Sosnick's lobbying agreement and political influence, Mayor de Blasio's statements, and the DOB's issuance of violations and orders has no bearing on whether the DOB had discretion to withhold the permits sought by Plaintiffs. (See Dismissal Order (Dkt. No. 101) at 35-36) And while Plaintiffs claim that their application "was for an 'as-of-right' building permit[,] which is one that must be issued as a ministerial act by DOB as opposed to a discretionary one where DOB is empowered to exercise discretion" (Pltf. Br. (Dkt. No. 106) at 22), this is simply a rehashing of the same argument the Court rejected in granting Defendants' motion to dismiss the Amended Complaint. (See Dismissal Order (Dkt. No. 101) at 36 (describing Plaintiffs' argument that the DOB lacked discretion to deny Plaintiffs' permit "[b]ecause 'DOB must issue a building permit' once the Department is satisfied that the relevant requirements have been met"). As explained in the Dismissal Order, courts in this Circuit "have concluded that an agency charged with issuing permits has discretion sufficient to deny a claim of entitlement to a permit where the agency is tasked with determining an application's compliance with applicable laws and regulations – even where, upon a showing of compliance, issuance of the permit is mandatory." (Id. at 36-38 (collecting cases)) Plaintiffs assert no new facts or arguments that cast doubt on the Court's reliance on this line of cases.

---

Court to alter its decision regarding Plaintiffs' equal protection claims. And, as discussed below, these new allegations do not impact the Dismissal Order's analysis concerning Plaintiffs' substantive due process and unconstitutional conditions claims.

Although the PSAC asserts a new equal protection claim based on the City's application of the Dorm Rule to Old P.S. 64 in contrast to "other similarly situated as-of-right developments" (see PSAC (Dkt. No. 106-1) ¶¶ 378-38), Plaintiffs do not describe these purportedly "similarly situated" developments in any detail. Accordingly, this claim would be dismissed for the same reasons that this Court dismissed Plaintiffs' equal protection claims in the Amended Complaint.

Moreover, even if Plaintiffs' new arguments demonstrated that they were entitled to permits from the DOB, they still have not shown "that Defendants' 'official conduct [is] outrageous and egregious under the circumstances.'" (Id. at 38-39 (quoting Lombardi, 485 F.3d at 81)  At bottom, Plaintiffs' new allegations and arguments still amount to assertions that Defendants targeted Plaintiffs' construction project and that their motives for denying Plaintiffs' permits were improper.  (See, e.g., Pltf. Br. (Dkt. No. 106) at 25 (arguing that the DOB "has used [the Dorm Rule] to [improperly] deny Plaintiff[s'] permit application since 2012," and that "Defendants have NO conceivable legitimate purpose for forcing Plaintiff[s] to produce a ten-year lease agreement as a pre-requisite for a permit" (emphasis in original))  As the Court explained in the Dismissal Order, however, "'[t]hese types of allegations of improper motives and selective enforcement on the part of municipal officials fall into the non-conscience-shocking category.'"  (Dismissal Order (Dkt. No. 101) at 39 (quoting Rankel v. Town of Somers, 999 F. Supp. 2d 527, 547 (S.D.N.Y. 2014) (additional quotation marks and citations omitted))  In sum, Plaintiffs' new allegations do not assist them in pleading a substantive due process violation.[9]

---

[9] As noted above, Plaintiffs argue that this Court erred in "[finding] that Adelphi University terminated [its] lease agreement [with Plaintiffs] due to 'alleged pressure' from the Defendants when, in fact, Adelphi University was forced to terminate the lease agreement as a direct result of the City's deliberate conduct, which made it impossible for Adelphi to occupy the building by Fall 2018."  (Pltf. Br. (Dkt. No. 106) at 28)  Plaintiffs claim that this alleged error somehow impacted the Court's analysis of their "[c]onspiracy . . . , equal protection, [and] substantive due process claims."  But Plaintiffs do not explain how the distinction they identify impacted the Court's analysis in the Dismissal Order.  (See id. at 28-31)  The Court's decision in the Dismissal Order does not turn on whether Adelphi was "forced" to terminate its lease agreement with Plaintiffs, as opposed to being simply "pressured" to do so.  Accordingly, this argument provides no basis for this Court to grant Plaintiffs' motion.

Moreover, this Court did not "overlook[] the significance of the Mayor's public statement" on October 12, 2017.  (See Pltf. Br. (Dkt. No. 106) at 31-33)  For the reasons explained above and in the Dismissal Order, the Mayor's statement simply has no bearing on the validity of Plaintiffs' constitutional claims.

With respect to Plaintiffs' unconstitutional conditions claim, Plaintiffs summarily argue that they "have adequately alleged a taking insofar as the City's actions prevented [Plaintiffs] from making any economic use of [their] property, the City interfered with [Plaintiffs'] reasonable investment-backed expectations, and the City's conduct was unfair, unreasonable, and in bad faith." (Pltf. Br. (Dkt. No. 106) at 11)  But – as in the Amended Complaint – Plaintiffs still "do no more than assert, in entirely conclusory fashion" that Defendants' conduct amounts to a taking.  (See Dismissal Order (Dkt. No. 101) at 43); see also Kabrovski v. City of Rochester, 149 F. Supp. 3d 413, 424-25 (W.D.N.Y. 2015) (dismissing regulatory takings claim where the complaint, inter alia, "does not indicate the economic impact that the Defendants' actions . . . had on the Plaintiff, except in vague and conclusory terms," and "fails to explain how Defendants' actions . . . interfered with Plaintiffs' 'reasonable investment-backed expectations'").  Because Plaintiffs still have not plausibly alleged a taking, their "unconstitutional conditions doctrine claim fails." (Dismissal Order (Dkt. No. 101) at 44 (collecting cases))[10]

As explained in the Dismissal Order, Plaintiffs' Section 1983 and Section 1985 conspiracy claims require that Plaintiffs adequately allege an underlying constitutional violation. (See id. at 44-46)  Because Plaintiffs' new arguments and allegations do not cure the defects in

---

Finally, although the PSAC adds another substantive due process claim, the new claim simply states, in conclusory fashion, that "[t]he application of [the Dorm Rule] to a proposed college student dormitory and nonprofit with sleeping accommodations that is not eligible for a FAR bonus is not substantially related to a compelling government interest." (PSAC (Dkt. No. 106-1) ¶ 385)  In connection with this new claim, Plaintiffs still have not identified a valid property interest or outrageous or egregious behavior committed by Defendants.  Accordingly – for the same reasons explained in the Dismissal Order – this new substantive due process claim would not survive a motion to dismiss.

[10]  Although the PSAC contains a new claim under the "unconstitutional conditions doctrine," this new claim still does not plausibly allege a taking under any theory.  (See PSAC (Dkt. No. 106-1) ¶¶ 387-394)  This claim fails for the same reasons as Plaintiffs' original unconstitutional conditions doctrine claim in the Amended Complaint.

17

their constitutional claims, their conspiracy claims still "fail as a matter of law." (Id. at 46)  And because Plaintiffs' claim under Section 1986 is contingent on their Section 1985 claim (see id. at 46-47), that claim must also be dismissed.

Finally, Plaintiffs do not appear to challenge this Court's decision not to exercise supplemental jurisdiction over their state law claims.  Because Plaintiffs' federal claims still fail as a matter of law, nothing in Plaintiffs' reconsideration brief or in the PSAC alters this Court's decision not to exercise supplemental jurisdiction over Plaintiffs' state law claims.  (See id. at 47-48)

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to alter or amend the judgment to allow them to file a Second Amended Complaint is denied.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 105 and 106.

Dated:     New York, New York
           September 28, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge